UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

MATTHEW JAMES GUIDRY         CASE NO.  6:20-CV-01430

VERSUS                       JUDGE ROBERT R. SUMMERHAYS

MARTIN CORMIER ET AL         MAGISTRATE JUDGE HANNA

## REPORT AND RECOMMENDATION

Before this Court is a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) filed by Defendants Det. Martin Cormier ("Cormier" or "Det. Cormier") and the City of Breaux Bridge ("City").  (Rec. Doc. 5). Plaintiff opposed the motion (Rec. Doc. 10), and Defendants replied in support of the motion.  (Rec. Doc. 11). The motion was referred to the undersigned magistrate judge for review, report, and recommendation in accordance with the provisions of 28 U.S.C. §636 and the standing orders of the Court.  Considering the evidence, the law, and the arguments of the parties, and for the reasons explained below, this Court recommends that Defendants' motion be GRANTED in part and DENIED in part.

I.    Relevant Factual Background

Plaintiff Matthew James Guidry ("Plaintiff" or "Guidry") was one of several guests at the home of Tyree Mouton ("Mouton") in Breaux Bridge, Louisiana on August 5, 2017. (Rec. Doc. 1 at ¶¶ 7-8).  Before arriving at Mouton's home,

Plaintiff and several others attended a party at Park Place Apartments in Lafayette, Louisiana, at which they drank "copious amounts of alcoholic beverages" and became intoxicated. (Rec. Doc. 1 at ¶ 10). Among the attendees at the party was Joanelle Prejean ("Prejean"), who arrived with Germaine Biggs ("Biggs"), a "close, personal friend" of Plaintiff. (*Id.* at ¶¶ 7, 11). Plaintiff alleges that Prejean flirted with him at the party. Witnesses stated that Prejean was verbally and physically aggressive with Biggs, who eventually left the party without Prejean. (*Id.* at ¶ 11).

The party was reported to police because of noise complaints and, as guests were leaving, Mouton offered Prejean a ride to his house since she had no transportation. (*Id.* at ¶ 12). Due to the severe intoxication of another guest and the ensuing shuffling of vehicles and drivers, Plaintiff agreed to drive Prejean to Mouton's home. (*Id.* at ¶ 13). Plaintiff alleges that during the drive Prejean cried and lamented the death of her father and her "rough life[.]" Plaintiff asserts that Mouton arrived at his home to find Plaintiff and Prejean standing outside the home, embracing and "making out[.]" (*Id.* at ¶ 14). Plaintiff claims that, after some time inside Mouton's home, Plaintiff and Prejean engaged in consensual sex on Mouton's sofa. Plaintiff recalls that, while he was having sex with Prejean, a female named Chelsea Jones ("Jones")

emerged from another room and, witnessing Plaintiff and Prejean, loudly exclaimed "what the f--- !", alerting Mouton, who then entered the living room where the scene was unfolding.[1]  Plaintiff alleges that, at this moment, Prejean dropped onto the floor, "kicking and screaming and hitting the wall" such that Mouton became concerned for his sleeping infant daughter, also within the home.  (Rec. Doc. 1 at ¶ 15).

Plaintiff claims that Mouton attempted to drive Prejean home, but Prejean refused to tell Mouton where she lived, becoming increasingly violent within the vehicle.  Mouton let Prejean out of his vehicle at the 1700 block of South College Road in Lafayette, Louisiana, near Lafayette General Medical Center.  (*Id.* at ¶ 15).  A Lafayette police officer noticed Prejean, who appeared to be in distress, on a sidewalk on South College Road.  The officer stopped his vehicle and spoke with Prejean, who he observed to be distraught.  Prejean alleged that she had been raped and thrown out of a car after drinking at a pool party at Park Place Apartments.  The officer summoned an ambulance and Prejean was transported to an area hospital.  (*Id.* at ¶ 16).

---

[1] There is evidence to suggest that Jones was involved in an intimate relationship with Plaintiff at the time of the events in question.

Det. Cormier became involved with Prejean's case on August 6, 2017, participating in the taking of Prejean's statement at the Lafayette Police Department. (Rec. Doc. 1 at ¶ 17). After gathering witness reports, physical evidence and the initial police report, Cormier began taking witness statements, including that of Plaintiff. Plaintiff, with counsel, voluntarily met with Cormier on August 15, 2017. Plaintiff waived his Miranda rights and admitted to having consensual sex with Prejean on August 6, 2017. (*Id.* at ¶ 18). Following the statement, Plaintiff agreed that, if an arrest warrant was issued for Plaintiff, he would turn himself in. Prejean was interviewed by detectives with both the Lafayette and Breaux Bridge police departments on August 9 and 14, 2017. Detective Cormier also interviewed Mouton and another witness on August 11, 2017. Plaintiff, again accompanied by counsel, returned for a second interview with Det. Cormier on August 15, 2017. *Id.* at ¶ 18. Citing portions of statements given by Plaintiff and various witnesses, Det. Cormier prepared an Affidavit for Arrest Warrant ("Affidavit") on October 11, 2017. Louisiana State District Judge Anthony Thibodeaux signed the warrant on the same day. (*Id.* at ¶ 20). After learning through counsel of the issuance of a warrant for his arrest, Plaintiff turned himself in to Breaux Bridge police on

October 16, 2017, where he was arrested and subsequently transported to the St. Martin Parish jail. (Rec. Doc. 1 at ¶ 18).

Plaintiff asserts that he was forced to spend the night at the St. Martin Parish jail and, during his stay there, was afraid for his safety. Plaintiff was released on a $5000 appearance bond the following day. Plaintiff was tried on November 8, 2019 on the charge of third-degree rape in a two-day bench trial before Louisiana State District Judge Anthony Thibodeaux. Plaintiff was acquitted of the charge. (*Id.* at ¶¶ 18-19).

Plaintiff filed the instant suit against Det. Cormier, the City of Breaux Bridge, Louisiana, and ABC Insurance Company as insurer of the City of Breaux Bridge on November 5, 2020, asserting a claim under the Fourth Amendment connected to malicious prosecution pursuant to 42 U.S.C. §§ 1983 and 1988 and a related Louisiana law malicious prosecution claim. (*Id.* at ¶¶30 – 34). Plaintiff's suit seeks both compensatory and punitive damages. (*Id.* at ¶¶ 35-38).

Defendants filed the instant motion to dismiss on January 8, 2021. (Rec. Doc. 5). The motion is now fully briefed and ripe for consideration under LR 7.

## II.    Law applicable to Rule 12(b)(6)

When considering a motion to dismiss for failure to state a claim under F.R.C.P. Rule 12(b)(6), the district court must limit itself to the contents of the pleadings, including any attachments and exhibits thereto. *Collins v. Morgan Stanley Dean Witter*, 224 F.3d 496, 498 (5th Cir.2000); *U.S. ex rel. Riley v. St. Luke's Episcopal Hosp.,* 355 F.3d 370, 375 (5th Cir.2004). When reviewing a motion to dismiss, a district court may also consider "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Funk v. Stryker Corp.,* 631 F.3d 777, 783 (5th Cir.2011), citing *Tellabs, Inc. v. Makor Issues & Rights, Ltd.,* 551 U.S. 308, 322 (2007).

The court must accept all well-pleaded facts as true and view them in the light most favorable to the plaintiff. *In re Katrina Canal Breaches Litigation*, 495 F.3d 191, 205 (5th Cir.2007) (internal quotations omitted) (quoting *Martin K. Eby Constr. Co. v. Dallas Area Rapid Transit*, 369 F.3d 464, 467 (5th Cir.2004)); *Baker v. Putnal*, 75 F.3d 190, 196 (5th Cir.1996). However, conclusory allegations and unwarranted deductions of fact are not accepted as true, *Kaiser Aluminum & Chemical Sales v. Avondale Shipyards*, 677 F.2d 1045, 1050 (5th Cir. 1982) (citing *Associated Builders, Inc. v. Alabama Power Company*, 505 F.2d 97, 100 (5th Cir. 1974)); *Collins v. Morgan Stanley*, 224 F.3d at 498. Courts "are not bound to accept as true a legal

conclusion couched as a factual allegation." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (quoting *Papasan v. Allain*, 478 U.S. 265, 286 (1986)).

To survive a Rule 12(b)(6) motion, the plaintiff must plead "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic*, 127 U.S. at 570. The allegations must be sufficient "to raise a right to relief above the speculative level," and "the pleading must contain something more . . . than . . . a statement of facts that merely creates a suspicion [of] a legally cognizable right of action." *Id.* at 555 (quoting 5 C. Wright & A. Miller, Federal Practice and Procedure § 1216, pp. 235-36 (3d ed. 2004)). "While a complaint . . . does not need *detailed* factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Id.* (citations, quotation marks, and brackets omitted; emphasis added). *See also Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If the plaintiff fails to allege facts sufficient to "nudge [his] claims across the line from conceivable to plausible, [his] complaint must be dismissed." *Bell Atlantic v. Twombly*, 127 U.S. at 570.

A claim meets the test for facial plausibility "when the plaintiff pleads the factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. at 678. "[D]etermining whether a complaint states a plausible claim for relief . . . [is] a

context-specific task that requires the reviewing court to draw on its judicial experience and common sense." *Id.* at 679. Therefore, "[t]he complaint (1) on its face (2) must contain enough factual matter (taken as true) (3) to raise a reasonable hope or expectation (4) that discovery will reveal relevant evidence of each element of a claim." *Lormand v. US Unwired, Inc.*, 565 F.3d 228, 257 (5th Cir.2009) (quoting *Bell Atlantic v. Twombly*, 127 U.S. at 556). See also *In Re Southern Scrap,* 541 F.3d 584, 587 (5th Cir.2008). With these precepts in mind, the Court considers the Plaintiff's Complaint, including the exhibits attached thereto. (Rec. Doc. 1).

## III.    Analysis

### *Is Plaintiff's suit time-barred?*

Defendants' motion first seeks dismissal of Plaintiff's claims as time-barred. Although Plaintiff's Complaint labels his §1983 claim as one under the Fourth Amendment related to malicious prosecution, Defendants assert Plaintiff's claim is actually one for false arrest.  Applying Louisiana's one-year prescriptive period to the facts, Defendants allege that Plaintiff's claim prescribed one year from the date on which he was arraigned, or March 26, 2020. (Rec. Doc. 5-2 at pp. 9-12).

This court applies federal law to the issue of when a §1983 claim accrues but employs state law to determine the length of the limitations period, often by analogizing the federal claim to its closest state law counterpart.  *McDonough v.*

*Smith*, 139 S.Ct. 2149, 2155 citing *Wallace v. Kato*, 549 U.S. 384, 388 (2007) and

*Heck v. Humphrey*, 512 U.S. 477, 483 (1959).

Louisiana law recognizes the tort of malicious prosecution stemming from La. Civ. C. Art. 2315, the foundation of Louisiana tort law. *Jones v. Soileau*, 448 So.2d 1268, 1271 (La. 1984). "Actions for malicious prosecution are disfavored and a clear case must be established." *Id.*; *Johnson v. Pearce*, 313 So.2d 812 (La. 1975). The elements of this tort are: (1) the commencement or continuance of an original criminal or civil proceeding; (2) its legal causation by the present defendant in the original proceeding; (3) its bona fide termination in favor of the present plaintiff; (4) the absence of probable cause for such proceeding; (5) the presence of malice therein; and (6) damage conforming to legal standards resulting to plaintiff. *Id.* citing *Eusant v. Unity Industrial Life Ins.*, 196 So. 554 (La. 1940). Louisiana law also recognizes the tort of false arrest, requiring that a plaintiff demonstrate the following elements: (1) detention; and (2) the absence of probable cause therefor. *Thomas v. Pohlmann*, 681 Fed. Appx. 401 (5th Cir. 2017) quoting *Richard v. Richard*, 74 So.3d 1156, 1159 (La. 2011).

In *Winfrey v. Rogers*, 901 F.3d 483 (5th Cir. 2018) ("*Winfrey II*"), the Fifth Circuit Court of Appeals considered the Fourth Amendment claim of Junior Winfrey. Winfrey alleged that he was arrested pursuant to a warrant containing

misleading statements and omitting relevant facts.  There, as here, the parties

disputed the timeliness of the plaintiff's suit.  The Court instructed

> The accrual date depends on whether Junior's claim more closely resembles one for false imprisonment or one for malicious prosecution. *See id.* at 921–22 (remanding the case to the Seventh Circuit to consider whether the claim was more like a false imprisonment or a malicious prosecution). A false-imprisonment claim is based upon "detention without legal process." *Wallace,* 549 U.S. at 389, 127 S.Ct. 1091. It "begins to run at the time the claimant becomes detained pursuant to legal process." *Id.* at 397, 127 S.Ct. 1091. A malicious-prosecution claim is based upon "detention accompanied ... by *wrongful institution* of legal process." *Id.* at 390, 127 S.Ct. 1091. It "does not accrue until the prosecution ends in the plaintiff's favor." *Castellano*, 352 F.3d at 953.
>
> Johnson urges us to find that this case fits within *Wallace v. Kato*. There, the Supreme Court found that the plaintiff's unlawful warrantless-arrest Fourth Amendment claim resembled a false-imprisonment claim, because the constitutional violation occurred when the plaintiff was arrested without a warrant instead of when the conviction was later set aside. 549 U.S. at 397, 127 S.Ct. 1091. Law enforcement officers transported the fifteen-year-old plaintiff to a police station—without a warrant or probable cause to arrest him—and interrogated him into the early morning. *Id.* at 386, 389, 127 S.Ct. 1091. So, the Court found that the plaintiff's claim accrued when he was initially arrested. *Id.* at 397, 127 S.Ct. 1091.
>
> Here, we find that Junior's claim is more like the tort of malicious prosecution, because Junior was arrested through the wrongful institution of legal process: an arrest pursuant to a warrant, issued through the normal legal process, that is alleged to contain numerous material omissions and misstatements. **Junior thus alleges a wrongful institution of legal process—an**

> **unlawful arrest *pursuant to* a warrant—instead of a detention with no legal process. Because Junior's claim suggests malicious prosecution rather than false imprisonment, his claim accrued when his criminal proceedings ended in his favor on June 12, 2009.** He filed his suit well within the two-year limitations period on May 26, 2010. So Junior's claim survives the time bar. *Winfrey*, 901 F.3d 483, 492-93 (emphasis added).

Defendants argue that *Winfrey II* is inapplicable to Guidry's instant claims because Guidry did not remain in custody following his arrest, rendering his claim most like one for false imprisonment, which accrues on the date of arrest. (Rec. Doc. 11). Citing a 2019 ruling by this Court, *Harris v. Mamou Police Department*, 2019 WL 4200600 (W.D. La. 2019), Defendants assert that Plaintiff's suit must have been filed on or before October 16, 2018, a year from the date of his arrest. In *Harris*, the plaintiff asserted claims for violation of his Fifth, Eighth, Ninth and Fourteenth Amendment rights. Importantly, Harris also alleged false arrest and wrongful detention claims under the Fourth Amendment and a Louisiana law claim for malicious prosecution. *Id.* at * 1. *Harris* is inapplicable to the instant suit because Harris was not arrested pursuant to a warrant, but rather a complaint made to the Mamou Police Department, which led to his arrest based on witness statements given upon the officer's arrival. Thus, *Harris* illustrates the precise dividing line articulated by the appellate court in *Winfrey II* and is not applicable here.

In this case, Plaintiff was clearly subjected to "detention" via his arrest and short stay in jail. Plaintiff's voluntary surrender to an arrest warrant does not negate

11

the fundamental characteristics of this detention. *California v. Hodari D.*, 499 U.S. 621, 626 (1991); *Terry v. Ohio*, 392 U.S. 1, 19, n. 16 (1968). Similarly, that he was later granted an appearance bond does not negate his Fourth Amendment claim in this matter. *McLin v. Ard*, 866 F.3d 682, 692-93 (5th Cir. 2017) (highlighting prior jurisprudence in which a voluntary submission to arrest warrant followed by a release on bond constituted a Fourth Amendment seizure) (internal citations omitted). Thus, we reject argument by Defendants argument seeking to subdivide this issue based on the length of incarceration after arrest.

Under Louisiana law, a claim for malicious prosecution accrues when the unlawful proceeding is terminated in the plaintiff's favor. *Brummett v. Camble*, 946 F.2d 1178 (5th Cir. 1991). Applying Louisiana's one-year liberative prescriptive period, applicable to the tort of malicious prosecution, Plaintiff's claim must have been filed on or before November 8, 2020 (one year following Plaintiff's November 8, 2019 acquittal). La. Civ. C. Art. 3492. (Rec. Doc. 1-2). The instant suit was, thus, timely filed on November 5, 2020. (Rec. Doc. 1).

### Is Det. Cormier entitled to qualified immunity?

Defendants' motion argues in the alternative, that if this Court finds Plaintiff's §1983 claim to be viable, Det. Cormier is entitled to qualified immunity. Qualified immunity, an affirmative defense to a suit under 42 U.S.C. § 1983, protects government officials in their individual capacity, while performing discretionary

functions, not only from suit, but from "liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982).  See, also, *Prison Legal News v. Livingston*, 683 F.3d 201, 224 (5th Cir. 2012); *Morgan v. Swanson*, 659 F.3d 359, 371 (5th Cir. 2011) (en banc). Qualified immunity protects "all but the plainly incompetent or those who knowingly violate the law."  *Whitley v. Hanna*, 726 F.3d at 638 (quoting *Malley v. Briggs*, 475 U.S. 335, 341 (1986)).

Although qualified immunity is "nominally an affirmative defense, the plaintiff has the burden to negate the defense once properly raised."  *Poole v. City of Shreveport*, 691 F.3d 624, 627 (5th Cir. 2012) (quoting *Brumfield v. Hollins*, 551 F.3d at 326).  Where qualified immunity is pled, a district court should undertake the two-part *Saucier* inquiry, asking first whether the plaintiff alleges the violation of a constitutional right, and next whether the right at issue was "clearly established" at the time of the alleged violation.  *Tolan v. Cotton*, 572 U.S. 650, 655-56 (2014) citing *Saucier v. Katz*, 533 U.S. 194, 201 (2001) and *Hope v. Pelzer*, 536 U.S. 730, 739 (2002).

Plaintiff's Complaint names Det. Cormier in his individual capacity, as well as the City as Cormier's employer for purposes of *respondeat superior*.  (Rec. Doc. 1 at ¶¶ 4-5).  The Complaint articulates facts that, if proven, would support a

finding that the Affidavit was so deficient that it resulted in the issuance of an arrest warrant without probable cause.  Plaintiff alleges that: (1) he was subjected to an arrest followed by a full criminal trial on the charge of third-degree rape; (2) that such proceeding was initiated by Det. Cormier's Affidavit; (3) that such proceeding was terminated in his favor upon his acquittal of the charge against him; and (4) that he claims damages relating not only to the cost of his defense, but also compensatory damages for the anxiety and mental anguish he alleges he suffered because of this proceeding.  What remains, then, is the issue of "malice" on Det. Cormier's part. Louisiana law provides that malice can be inferred from a lack of probable cause or a finding that defendant "acted in reckless disregard of the other person's rights."  *Miller v. East Baton Rouge Parish Sherriff's Dept.*, 511 So.2d 446, 453 (La. 1987).

Plaintiff's claim is unique in that it alleges not that the affidavit and ensuing warrant were facially void of probable cause, but that the Affidavit contained so many relevant omissions that it did not accurately present the probable cause issue to Judge Thibodeaux for an independent assessment.  Examining Plaintiff's claim in this way, we are constrained to reject Defendants' argument that qualified immunity should apply in this case.  If proven, Plaintiff's allegations would demonstrate the willful omission of exculpatory facts and statements that should have been presented to Judge Thibodeaux for consideration.

14

Specifically, Plaintiff's Complaint alleges that Det. Cormier omitted the following exculpatory evidence, which he alleges were known to Det. Cormier at the time he authored the Affidavit:

(1) Prejean's admission that, at the time of the events in question, she had not taken her psychiatric medications in approximately three (3) days;

(2) relevant information from Prejean's medical records regarding the several psychiatric conditions with which Prejean was recently diagnosed during her stay at Vermillion Hospital;

(3) discrepancies in various versions of Prejean's story of how she got from the party to Mouton's home;

(4) the romantic relationship that may have existed between Plaintiff and Ms. Chelsea Jones, a witness to many of the events in question;

(5) the lack of physical evidence to support Prejean's story of physical injuries sustained during the evening in question;

(6) the exculpatory statement given by witness Mouton regarding his observation of Plaintiff and Prejean engaged in what he felt was clearly consensual romantic interaction; and

(7) the handwritten statement by Prejean's original date on the evening in question, Germaine Biggs, in which he affirmed that Prejean was, at the time of the events in question, engaging in the most troubling psychiatric behavior that he could ever recall on her part and that he felt she needed help.  (Rec. Doc. 1 at ¶¶ 22 – 29).

Although this Court is not in a position to know what decision Judge Thibodeaux might have made, the undersigned is convinced that, given the seriousness and factual complexity of the crime alleged, the seven (7) or more exculpatory items of evidence omitted from the affidavit cannot be dismissed as inconsequential to the issue of probable cause.

Turning now to the second *Saucier* factor, whether the right at issue was clearly established at the time of Defendant's conduct, we find that Plaintiff satisfies his burden on these facts.  The Fourth Amendment's requirement that all arrest warrants be supported by probable cause and that factual defects in the supporting affidavit may render a resulting warrant invalid was conclusively established at the time of the events in question.  *Franks v. Delaware*, 98 S.Ct. 2674 (1978) (defect by inclusion of false information resulted in a violation of the Fourth Amendment's protections where the statements at issue were shown to be consequential to the finding of probable cause upon which an arrest warrant was issued).

Given the foregoing findings that Plaintiff (1) clearly articulates facts which, if proven, demonstrate the violation of a constitutional right under the Fourth Amendment, and (2) such right was clearly established at the time of alleged violation, the affirmative defense of qualified immunity is not available to Det. Cormier in this case.

16

### *Does the independent intermediary doctrine apply in this case?*

The "independent intermediary doctrine" insulates the initiating party from liability when the facts supporting a warrant are put before an impartial intermediary such as a magistrate judge or grand jury, even where malice on the part of the initiating party is shown. *Hand v. Gary*, 838 F.2d 1420, 1427 (quoting *Smith v. Gonzales*, 670 F.2d 522, 526 (5th Cir. 1982)). The taint exception to the independent intermediary doctrine applies to when the initiating party's "malicious motive" leads them to withhold relevant information from the independent intermediary. *Id.* at 1428. "To satisfy the taint exception, omissions of exculpatory information must be 'knowing.'" *Buehler v. City of Austin/Austin Police Department*, 824 F.3d 548, 555 (5th Cir. 2016) (quoting *Cuadra v. Hous. Indep. Sch. Dist.*, 626 F.3d at 813-14). "Mere allegations of 'taint' without more are insufficient in the summary judgment setting but may be adequate to survive a motion to dismiss where the complaint alleges other facts supporting the inference." *McLin v. Ard*, 866 F.3d 682 (5th Cir. 2017).

As discussed above, Plaintiff's Complaint alleges willful omission of exculpatory evidence by Det. Cormier in the drafting of the Affidavit. (Rec. Doc. 1 at ¶¶ 22 – 29). If proven, these allegations would permit the inference of malice. Considering the exculpatory nature of all the evidence Det. Cormier is alleged to have purposefully omitted, as well as his personal role in collecting the evidence at

issue, this Court finds that Plaintiff's claims should be preserved for further proceedings.  The independent intermediary doctrine is inapplicable to these facts.

### *Is Det. Cormier entitled to immunity under La. R.S. §§ 9:2798.1 and 9:280010?*

Defendants assert discretionary immunity as to Plaintiff's Louisiana law malicious prosecution claims against them.  La. R.S. 9:2798.1 provides immunity for public entities and their officers or employees for claims based on their policy-making decisions or discretionary acts within the course and scope of employment.  Subsection (C)(2) qualifies the scope of immunity by making it unavailable for "acts or omissions which constitute criminal, fraudulent, malicious, intentional, willful, outrageous, reckless, or flagrant misconduct."  The immunity afforded under this statute applies to public entities as to their "policy-making decisions or discretionary acts carried out within the course and scope of their employment."  *Dominique v. Parish*, 2020 WL 5543960, * 6 (La. App. 1 Cir. 2020).  "Whether a given set of conduct rises to the level of 'criminal, fraudulent, malicious, intentional, willfull, outrageous, reckless, or flagrant misconduct' is a standard created by law to determine whether liability will result from that conduct; as such, the question of whether a given set of conduct rises to the level [required by Subsection (C)(2)] is purely a question of law, and is within the province of the trial court to determine at the summary judgment stage."  *Simmons v. Hughes*, 2020 WL 6948991 (La. App. 1 Cir. 2020).

18

In *Gregor v. Argenot Great Cent. Ins. Co.*, 851 So.2d 959 (La. 2003) the Louisiana Supreme Court evaluated its own prior decision in *Fowler v. Roberts*, 556 So.2d 1 (La. 1990) and concluded that Fowler and its progeny impermissibly inserted the issue of "operational" and "ministerial or policymaking acts" into analysis of discretionary immunity. The *Gregor* court found that La. R.S. 9:2798.1 is clear and unambiguous as written and should be so applied. *Gregor*, 851 So.2d at 967. In so noting, we reject the analysis urged by Plaintiff, relying upon the issue of "operational" vs. "ministerial or policymaking" as definitive in this case.

In *Herrera v. First Nat. Ins. Co. of America*, 194 So.3d 807 (La. App. 1 Cir. 2016), the Louisiana First Circuit Court of Appeals considered a claim of discretionary immunity by Louisiana State Police officers. Citing La. R.S. 40:1379, 40:2402(3)(a), and 40:2402(3)(A), the *Herrera* court found that the officers in question had a statutory duty to enforce the law, prevent crime and protect citizens. Issuing summons and making arrests are expressly within the scope of this duty. *Id.* at 815 citing La. C. Cr. P. 213; La. R.S. 9:2798.1(B); and *Millet v. Jacques*, 2011 WL 4349402. Individual decisions about when a summons should issue or an arrest be made are discretionary. Louisiana courts considering discretionary immunity for law enforcement officers generally agree that, absent proof of "criminal, fraudulent, malicious, intentional, willful, outrageous, reckless or flagrant misconduct," officers are immune from civil liability for claims arising

19

from the discretionary acts within the course and scope of their official duties. La. R.S. 9:2798.1(C)(2); *Miller v. Village of Hornbeck*, 65 So.3d 784, 788 (La. App. 3 Cir. 2011).

Our review of Louisiana jurisprudence regarding this issue leads this Court to conclude that both Det. Cormier, as an employee of the City, a "public entity," and the City, as a "public entity," pursuant to La. R.S. 9:2798.1(A), are immune from civil liability for Plaintiff's Louisiana law malicious prosecution claims in this suit. As explained by the Louisiana Supreme Court in *Gregor*, Louisiana's statutory immunity is materially different from its federal counterpart. *Gregor*, 851 So.2d at 966-67 (criticizing the analysis of *Fowler*, in which the court began from the premise that immunity pursuant to La. R.S. 9:2798.1 is essentially the same as that applicable to FTCA claims). This case presents an example of how analyses of federal and state law immunity can yield two different conclusions.

Defendants also cite La. R.S. 9:2800.10 as an additional basis for immunity in this case. That statute provides

> A. No person shall be liable for damages for injury, death, or loss sustained by a perpetrator of a felony offense during the commission of the offense or while fleeing the scene of the offense.
>
> B. The provisions of this Section shall apply regardless of whether the injury, death, or loss was caused by an intentional or unintentional act or omission or a condition of property or a building. However, the provisions of this Section shall not apply if injury to or death of a

20

perpetrator results from an intentional act involving the use of excessive force.

C. For purposes of this Section "damages" includes all general and special damages which may be recoverable for personal injury, death, or loss of or damage to property, including those otherwise recoverable in a survival or wrongful death action.

Defendants cite no authority for the application of this statute to facts such as those before this Court. This Court's own research produced no cases in which immunity under La. R.S. 9:2800.10 was applied to law enforcement conduct outside of excessive force claims. Moreover, Plaintiff was acquitted of the felony rape charge upon which Defendants base their argument in favor of this second form of statutory immunity. Accordingly, we reject the application of La. R.S. 9:2800.10 in this case.

## IV.    **Conclusion**

This Court finds that Defendants' motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) should be DENIED in part and GRANTED in part. Plaintiff's federal Fourth Amendment claims related to malicious prosecution are not time-barred and Defendants have not demonstrated entitlement to qualified immunity applicable to federal claims at this point in the case. Defendants' motion should be DENIED as to Plaintiff's federal Fourth Amendment claims. Conversely, Defendants are entitled to discretionary immunity under La. R.S. 9:2798.1, such that Defendants'

21

motion to dismiss should be GRANTED as to Plaintiff's Louisiana law claims against both Det. Cormier and the City of Breaux Bridge.

We note the important principle of resolving immunity questions at the earliest possible stage of litigation, preserving, to the extent possible, the protections afforded by immunity. *Pearson v. Callahan*, 55 U.S. 223 (2009). Often, when immunity is asserted at the pleadings stage and, as here, becomes the basis of a motion pursuant to Fed. R. Civ. P. 12(b)(6), the facts essential to the resolution of the immunity issue are not yet known, as discovery awaits a determination of the same issue. In these cases, courts may allow limited discovery confined to the immunity issue and, thus, serve the dual interests of fairness to a plaintiff who may not come to know of relevant facts without discovery and, at the same time, protect the purpose of immunity where it is applicable. The undersigned would suggest that a similar approach be employed here out of an abundance of caution. *Zapata v. Melson*, 750 F.3d 481 (5th Cir. 2014); *Wicks v. Miss. State Emp't Servs.*, 41 F.3d 991 (5th Cir. 1995). To that end, it is recommended that limited discovery confined to the issue of qualified immunity be permitted in this case, enabling the reconsideration of the defense in the context of summary judgment.

Under the provisions of 28 U.S.C. § 636(b)(1)(C) and Fed. R. Civ. P. 72(b), parties aggrieved by this recommendation have fourteen days from service of this

report and recommendation to file specific, written objections with the Clerk of Court. A party may respond to another party's objections within fourteen days after being served with of a copy of any objections or responses to the district judge at the time of filing.

Failure to file written objections to the proposed factual findings and/or the proposed legal conclusions reflected in the report and recommendation within fourteen days following the date of its service, or within the time frame authorized by Fed. R. Civ. P. 6(b), shall bar an aggrieved party from attacking either the factual findings or the legal conclusions accepted by the district court, except upon grounds of plain error. See *Douglass v. United Services Automobile Association*, 79 F.3d 1415 (5th Cir. 1996) (en banc), *superseded by statute on other grounds*, 28 U.S.C. §636(b)(1).

THUS DONE in Chambers, Lafayette, Louisiana on this 8th day of March, 2021.

_____
PATRICK J. HANNA
UNITED STATES MAGISTRATE JUDGE